# United States Court of Appeals for the Federal Circuit

_____

**MOTOROLA MOBILITY, LLC (formerly known as Motorola Mobility, Inc.),**
*Appellant,*

v.

**INTERNATIONAL TRADE COMMISSION,**
*Appellee,*

AND

**MICROSOFT CORPORATION,**
*Intervenor.*

_____

2012-1535

_____

Appeal from the United States International Trade Commission in Investigation No. 337-TA-744.

_____

Decided: December 16, 2013

_____

CHARLES K. VERHOEVEN, Quinn Emanuel Urquhart & Sullivan, LLP, of San Francisco, California, argued for appellant. With him on the brief were DAVID A. NELSON, of Chicago, Illinois; and EDWARD J. DEFRANCO, RAYMOND N. NIMROD and MATTHEW A. TRAUPMAN, of New York, New York.

MICHAEL LIBERMAN, Attorney, Office of the General Counsel, United States International Trade Commission, of Washington, DC, argued for appellee. With him on the brief were DOMINIC L. BIANCHI, Acting General Counsel, and WAYNE W. HERRINGTON, Acting General Counsel. Of counsel was ANDREA C. CASSON.

CONSTANTINE L. TRELA, JR., Sidley Austin, LLP, of Chicago, Illinois, argued for intervenor. With him on the brief were DAVID T. PRITIKIN, RICHARD A. CEDEROTH, and and ELLEN S. ROBBINS. Of counsel on the brief were BRIAN R. NESTER, RYAN C. MORRIS, and BRIAN JOHNSON of Washington, DC. Of counsel were MICHAEL R. FRANZINGER, of Washington, DC and DOUGLAS LEWIS, of Chicago, Illinois.

---

Before RADER, *Chief Judge,* PROST, and TARANTO, *Circuit Judges.*

RADER, *Chief Judge.*

The International Trade Commission determined that Motorola Mobility LLC (Motorola) violated § 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, by importing and selling mobile devices that infringe Microsoft Corporation's U.S. Patent No. 6,370,566 ('566 patent). Because substantial evidence supports the Commission's determinations that Motorola did not show that the asserted claims are invalid, and that Microsoft showed that it satisfied the domestic industry requirement, this court affirms.

I.

On October 1, 2010, Microsoft filed a complaint in the International Trade Commission against Motorola. Microsoft alleged that the importation and sale of certain Motorola mobile devices infringed nine Microsoft patents, including the '566 patent. The Commission instituted an

investigation shortly thereafter. *Certain Mobile Devices, Associated Software, & Components Thereof* (*Certain Mobile Devices*), Inv. No. 337-TA-744, Notice of Investigation, 75 Fed. Reg. 68379–02 (Nov. 5, 2010).

Although the Commission's investigation involved multiple Microsoft patents, only the '566 patent is involved in this appeal. The '566 patent claims a mobile device containing a personal information manager (PIM). PIMs typically are applications that manage scheduling, communications and similar tasks. '566 patent col. 1 ll. 38–40. Microsoft Outlook is an example of a PIM. '566 patent col. 1 ll. 43–45.

Microsoft ultimately asserted claims 1, 2, 5 and 6 against Motorola during the investigation. Claim 1 is the only independent claim. It recites:

> A mobile device, comprising:
>
> an object store;
>
> an application program configured to maintain objects on the object store;
>
> a user input mechanism configured to receive user input information;
>
> *a synchronization component* configured to synchronize individual objects stored on the object store with remote objects stored on a remote object store;
>
> a communications component configured to communicate with a remote device containing the remote object store; and
>
> wherein the application program is further configured to generate a meeting object and an electronic mail scheduling request object based on the user input information.

'566 patent col. 23 ll. 33–49 (emphasis added). Claims 2, 5 and 6 depend from claim 1.

During the investigation, Motorola initially contested infringement of the '566 patent. It argued, in relevant part, that the accused feature corresponding to the claimed synchronization component resides on a server rather than on Motorola's accused mobile devices, as required by the claims. J.A. 34823–25. According to Motorola, "[s]erver-based synchronization is a fundamentally different way to synchronize than client-based synchronization." J.A. 34824. However, Motorola later abandoned its non-infringement defense, conceding the issue. J.A. 42573–74. Motorola instead defended on the grounds that the asserted claims were invalid under 35 U.S.C. §§ 102 and 103, and that Microsoft did not satisfy the economic prong of the domestic industry requirement.

The administrative law judge issued his Initial Determination on December 20, 2011. *Certain Mobile Devices*, Inv. No. 337-TA-744, Initial Determination, EDIS No. 467464 (Dec. 20, 2011) (*Initial Determination*). The administrative law judge rejected Motorola's anticipation defense. Specifically, he found that Motorola had not demonstrated that the Apple Newton MessagePad—a prior art personal digital assistant—included the claimed synchronization component. *Id.* at 107. Motorola had argued that the disclosure of a synchronization feature in a manual for the related Newton Connection Utilities software demonstrated that the MessagePad satisfied this limitation. To the contrary, the software referenced in the manual was installed on the desktop rather than the mobile device. While the administrative law judge found it plausible that a synchronization component resided on the Apple Newton MessagePad, he concluded that the "inference of a possibility" did not rise to the level of clear and convincing evidence. *Id.*

Regarding obviousness, the administrative law judge found that Motorola had not delineated the scope and content of the prior art. *Id.* at 166. Motorola had argued that alleged admissions from Microsoft's expert, Dr. Smith, proved that the various claim limitations were known in the prior art, and that a motivation existed to implement those features on mobile devices. The administrative law judge determined that these "conclusory and generalized statements" did not rise to the level of clear and convincing evidence. *Id.* at 167–68.

The administrative law judge also concluded that Microsoft satisfied the domestic industry requirement. Motorola had argued that Microsoft relied on mobile devices for the technical prong, while relying on the mobile device's operating systems, an allegedly different product, for the economic prong. According to Motorola, this reliance on different products for the two prongs was improper. The administrative law judge rejected this argument, concluding instead that the operating systems and mobile devices running the operating systems were a single product for purposes of the domestic industry requirement. *Id.* at 208.

Motorola petitioned for Commission review. The Commission affirmed the administrative law judge's determinations in relevant part. *Certain Mobile Devices*, Inv. No. 337-TA-744, Commission Opinion, USITC Pub. 4384 (May 18, 2012) (*Commission Opinion*). The Commission agreed that the Apple Newton MessagePad did not satisfy the synchronization component limitation. And it adopted the administrative law judge's determination with respect to obviousness without modification. With respect to the domestic industry requirement, the Commission affirmed but with a modified reasoning. The Commission identified the specific subsections of § 337(a)(3) that Microsoft satisfied. And it rejected Motorola's argument that Microsoft improperly relied on different products for the technical and economic prong.

The Commission concluded that the operating system is merely part of the entire mobile device rather than a distinct product.

Motorola appeals. This court has jurisdiction under 28 U.S.C. § 1295(a)(6).

## II.

This court reviews the Commission's legal determinations without deference and its factual findings for substantial evidence. *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010). Anticipation, including whether a limitation is inherent in the prior art, is a question of fact. *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1362 (Fed. Cir. 1999). Obviousness is a legal conclusion based on underlying findings of fact. *In re Kubin*, 561 F.3d 1351, 1355 (Fed. Cir. 2009). These factual findings are: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art at the time the invention was made; and (4) objective indicia of nonobviousness, if any. *Id.* (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966)). The party challenging the patent bears the burden of proving invalidity by clear and convincing evidence. *See Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011). Finally, whether a complainant has satisfied the domestic industry requirement generally involves questions of both law and fact. *John Mezzalingua Assocs. v. Int'l Trade Comm'n*, 660 F.3d 1322, 1327 (Fed. Cir. 2011).

## III.

The Commission affirmed the finding that the Apple Newton MessagePad did not satisfy the synchronization component limitation, and consequently did not anticipate the asserted claims. Motorola appeals this decision. First, Motorola asserts that the claimed synchronization component refers to software that merely facilitates

communication and synchronization, as opposed to more active management. Second, with this understanding of the limitation, Motorola argues that a synchronization component must necessarily be present on both the Apple Newton MessagePad and the desktop in order to accomplish synchronization.

The first prong of Motorola's argument presents a claim construction dispute. Neither the Commission nor its administrative law judge construed the term "synchronization component." And, despite the earlier dispute over client-based and server-based synchronization, the parties do not appear to have proffered any construction— not even when Motorola conceded infringement. The claim phrase "synchronization component configured to synchronize" (certain objects with other objects) is therefore left with its ordinary meaning. Given the use of an active transitive verb with the mobile-device component as the subject, that meaning requires something more than whatever software may be needed simply for the mobile device to operate at all and to act entirely under the control of another device. Under that ordinary meaning, Motorola's argument is unpersuasive.

Here, the administrative law judge found that while "[i]t is certainly possible to infer that the Apple Newton contains a synchronization component, . . . the inference of a possibility does not rise to the level of clear and convincing evidence." *Initial Determination* at 107. And, in affirming, the Commission noted that Motorola had only "shown that the Apple Newton may have a synchronization function—without specifying any of the components that provide that synchronization." *Commission Opinion* at 14. In other words, both the judge and Commission found no clear and convincing evidence of any synchronization component in the Apple Newton MessagePad, regardless of whether that component actively managed synchronization or simply facilitated it.

Nevertheless, Motorola asserts that a synchronization component is inherently present in the Apple Newton MessagePad. Motorola cites to the '566 patent and expert testimony as support. Turning first to the '566 patent, it does not state that the only way synchronization may be achieved is with a synchronization component being present on the mobile device. Instead, the '566 patent simply describes its manner of synchronizing, which happens to involve a synchronization component on the mobile device. It is silent as to other possibilities. That silence is not evidence that synchronization, including the process referenced in the Newton Connection Utilities manual, necessarily requires a synchronization component on the mobile device. Indeed, Motorola specifically explained that "[s]erver-based synchronization is a fundamentally different way to synchronize than client-based synchronization." J.A. 34824.

The expert testimony is likewise unavailing. In a single sentence, without explanation, Motorola's expert opined that the synchronization function disclosed in the Newton Connections Utilities manual required the execution of software on the Apple Newton MessagePad. J.A. 86639. The administrative law judge and Commission did not act unreasonably in finding this conclusory sentence did not rise to the level of clear and convincing evidence. Nor did they act unreasonably in their treatment of the alleged admission of Microsoft's expert that the Apple Newton MessagePad satisfied the synchronization component limitation. J.A. 41479. The presiding judge in this case was best situated to consider the statement of Microsoft's expert, Dr. Smith, and the weight it should be given. Moreover, the alleged admission preceded the parties' joint stipulation that the Newton Connections Utilities source code was likely implemented on a desktop. J.A. 42428. *See also Norgren Inc. v. Int'l Trade Comm'n*, 699 F.3d 1317, 1326 (Fed. Cir. 2012) ("The responsibility of this court is not to re-weigh de novo the evidence on

close factual questions; it is to review the decision of the Commission for substantial evidence.").

In sum, the Newton Connection Utilities manual simply states that "[t]he Newton Connection Utilities work with the Newton 2.0 operating system," J.A. 74174, and that synchronization may be initiated using the Apple Newton MessagePad, J.A. 74254–55. However, the manual does not identify what role, if any, the operating system has in the synchronization of the Apple Newton MessagePad and the desktop. While the operating system presumably allowed the MessagePad to operate at all (without which synchronization, or anything else, might have been impossible), substantial evidence supports the Commission's conclusion that Motorola did not present clear and convincing evidence that the operating system *necessarily* required any additional capacity that would qualify it as a component "to synchronize." Inherency requires more than probabilities or possibilities. *Bettcher Indus. v. Bunzl USA, Inc.*, 661 F.3d 629, 639 (Fed. Cir. 2011).

Motorola's obviousness argument fares no better. For starters, Motorola did not clearly identify the scope and content of the prior art that it was asserting, or provide any argument that certain prior art references render a specific claim obvious. *Initial Determination* at 166–67. Motorola instead relied on statements from Microsoft's expert, Dr. Smith, concerning prior art desktop-based PIMs discussed in the '566 patent. But, according to the presiding judge, "Dr. Smith's 'admissions' however are insufficient, on their own, to carry [Motorola's] burden of proving invalidity." *Id.* at 168 n.35. This judge characterized Motorola's obviousness analysis as nothing more than "conclusory and generalized sentences." *Id.* at 168. The administrative law judge had no obligation to guess about which prior art combinations Motorola asserted, and how those references rendered the claims invalid. *Id.*

at 167. The Commission affirmed as well. *Commission Opinion* at 15.

Motorola had the burden of proving that the asserted claims would have been obvious at the time of invention, including identifying the scope and content of the prior art, and the differences between the prior art and the asserted claims. But Motorola only proffered alleged admissions from Microsoft's expert, Dr. Smith, concerning the general state of prior art desktop-based PIMs and a general desire to implement these alleged prior art features on a mobile device. Dr. Smith's testimony was not even necessarily specific to Schedule+ or Outlook in each instance. Moreover, Motorola did not specifically explain in its briefing to the administrative law judge how the desktop-based PIMs render any particular claim obvious. Neither the administrative law judge, nor the Commission, nor this court has the task of divining an invalidity defense from the record. *See Schumer v. Lab. Computer Sys.*, 308 F.3d 1304, 1316 (Fed. Cir. 2002). At all times, the burden of persuasion rests on the party challenging the patent. Here, substantial evidence supports the administrative law judge's conclusion, affirmed by the Commission, that Motorola did not prove by clear and convincing evidence that the asserted claims would have been obvious to one of ordinary skill in the art.

Finally, this court also affirms the Commission's determination that Microsoft satisfied the domestic industry requirement. A complainant asserting a patent under § 337 must prove that a domestic industry "relating to the articles protected by the patent" exists or is in the process of being established. 19 U.S.C. § 1337(a)(2); *see also Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1375 (Fed. Cir. 2003). For purposes of § 337, a domestic industry exists if there is, "with respect to the articles protected by the patent . . . (A) significant investment in plant and equipment; (B) significant employment of labor or capital; or (C) substantial investment in its exploitation, including

engineering, research and development, or licensing." 19 U.S.C. § 1337(a)(3). Sections 337(a)(2) and (a)(3) are commonly referred to as the technical and economic prongs, respectively.

With respect to the domestic industry requirement, both the administrative law judge and the Commission rejected the assertion that Microsoft was relying on separate products for the technical and economic prongs. The Commission affirmed the finding that the operating systems were significant parts of the mobile devices running those operating systems. *Commission Opinion* at 10–11 ("The operating system is a part of the entire mobile device . . . ."); *Initial Determination* at 198 ("[T]he operating systems are specifically tailored to meet the specifications and demands of each mobile device that utilizes it . . . [I]t is clear that the operating system is 'significant' to the mobile device."). Further, nothing in § 337 precludes a complainant from relying on investments or employment directed to significant components, specifically tailored for use in an article protected by the patent. The investments or employment must only be "with respect to the articles protected by the patent." 19 U.S.C. § 1337(a)(3). An investment directed to a specifically tailored, significant aspect of the article is still directed to the article.

In addition, the Commission provided a thorough summary of Microsoft's investments in facilities and equipment, employment of labor and capital, and investments in research and development. *Commission Opinion* at 9–10. The Commission concluded that "the evidence shows that Microsoft has made significant and/or substantial investments . . . related to the development" of its operating systems satisfying each of § 337(a)(3)(A), (B), and (C). *Id.* at 9. Based on this court's review, substantial evidence supports the Commission's determination that Microsoft's investments and employment satisfied § 337(a)(3).

IV.

The Commission's determination that Motorola failed to prove the asserted claims of the '566 patent are invalid is supported by substantial evidence, as is the Commission's determination that Microsoft satisfied the domestic industry requirement with respect to the '566 patent. Therefore, this court affirms.

**AFFIRMED**